[Cite as *State v. Romero*, 2017-Ohio-2950.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | : | Hon. Earle E. Wise, Jr., J. |
|  | : |  |
| -vs- | : |  |
|  | : |  |
| CARLOS ROMERO | : | Case No. 2016CA00201 |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
Court of Common Pleas, Case No.
2016CR0331

JUDGMENT:     Reversed and Remanded

DATE OF JUDGMENT ENTRY:     May 22, 2017

APPEARANCES:

For Plaintiff-Appellee             For Defendant-Appellant

JOHN D. FERRERO                  KIM ALABASI
STARK COUNTY PROSECUTOR      5368 St. Clair
BY: RONALD MARK CALDWELL     Cleveland, OH 44103
110 Central Plaza South, Ste. 510
Canton, OH 44702-1413

*Gwin, P.J.*

**{¶1}** Appellant Carlos Romero ["Romero"] appeals the October 21, 2016 decision from the Stark County Court of Common Pleas that denied his post-sentence motion to withdraw his negotiated guilty plea. The appellee is the State of Ohio.

*Facts and Procedural History*

**{¶2}** Romero is a 50 year-old man born in Honduras. Romero married a United States citizen in 1995 and legally obtained his permanent residence or "green card" status on April 1, 1998.

**{¶3}** On March 21, 2016, the Stark County Grand Jury returned an indictment that charged Romero with: 1). possession of marijuana in violation of R.C. 2925.11(A), a felony of the third degree per R.C. 2925.11(C)(3)(a), 2. trafficking in marijuana in violation of R.C. 2925.03(A)(2), a felony of the third degree per R.C. 2025.03(C)(3)(e), and 3), possession of cocaine in violation of R.C. 2925.11(A)(3), a felony of the fifth degree per R.C. 2925.11(C)(4)(a).

**{¶4}** On June 1, 2016, Romero appeared with counsel and entered guilty pleas to the charges set forth in the indictment. Sentencing was deferred until June 29, 2016 pending the completion of a pre-sentence investigation report[1]. Romero was sentenced by Judgment Entry filed July 6, 2016 to community control sanctions (intensive supervised probation) for a period of three years. In addition to this sentence, Romero was ordered to perform 100 hours of community service, and his driver's license was suspended for six months.

---

[1] A transcript of Romero's June 1, 2016 plea hearing is attached as "Court's Exhibit A" to the *Judgment Entry Denying Defendants' Emergency Motion to Withdraw Pleas and Vacate Sentences,* filed October 21, 2016. No transcript of Romero's June 29, 2016 Sentencing Hearing has been filed with this Court.

**{¶5}** Romero filed an Emergency Motion to Withdraw Pleas and Vacate Judgment on October 14, 2016 claiming that his attorney failed to advise him of the immigration consequences that would result from his guilty pleas. The trial court overruled the motion by judgment entry filed October 21, 2016 citing language from the transcript indicating that the appropriate immigration warnings pursuant to R.C. 2943.031 were read to Romero before accepting his pleas. The trial court concluded that because of the compliance with R.C. 2943.031, Romero's pleas were entered knowingly, voluntarily, and intelligently.

*Assignment of Error*

**{¶6}** "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO WITHDRAW PLEA AND VACATE CONVICTION PURSUANT TO OHIO RULE 32.1."

*Law and Analysis*

**{¶7}** The entry of a plea of guilty is a grave decision by an accused to dispense with a trial and allow the state to obtain a conviction without following the otherwise difficult process of proving his guilt beyond a reasonable doubt. *See Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473(1962). A plea of guilty constitutes a complete admission of guilt. Crim. R. 11(B)(1). "By entering a plea of guilty, the accused is not simply stating that he did the discreet acts described in the indictment; he is admitting guilt of a substantive crime." *United v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927(1989).

*Withdraw of Guilty plea Crim.R. 32.1.*

**{¶8}** Crim.R. 32.1 provides that a trial court may grant a defendant's post sentence motion to withdraw a guilty plea only to correct a manifest injustice. Therefore,

"[a] defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261,361 N.E.2d 1324(1977), paragraph one of the syllabus. Although no precise definition of "manifest injustice" exists, in general, "'manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'" *State v. Wooden*, 10th Dist. Franklin No. 03AP–368, 2004–Ohio–588, ¶ 10, *quoting State v. Hall*, 10th Dist. Franklin No. 03AP–433, 2003–Ohio–6939; *see, also, State v. Odoms*, 10th Dist. Franklin No. 04AP–708, 2005–Ohio–4926, *quoting State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83(1998) ("[a] manifest injustice has been defined as a 'clear or openly unjust act'"). Under this standard, a post-sentence withdrawal motion is allowable only in extraordinary cases. *Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324.

{¶9} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith* at paragraph two of the syllabus. Thus, we review a trial court's denial of a motion to withdraw a guilty plea under an abuse-of-discretion standard, and we reverse that denial only if it is unreasonable, arbitrary, or unconscionable. *Odoms*, 2005–Ohio–4926.

*Withdraw of Guilty plea for non-citizen.*

{¶10} However, "[c]riminal defendants who are not United States citizens are permitted to withdraw a guilty plea in two distinct ways: (1) upon the finding that they were not given the warning required by R.C. 2943.031(A)(1)[2] (and that the court was not

---

[2] The required warning is "If you are not a citizen of the United States, you are hereby advised that conviction of the offense to which you are pleading guilty (or no contest, when applicable) may have the

relieved of that requirement under R.C. 2943.031(B)) of the potential consequences to their resident status in the United States when they pled guilty to criminal charges (among other related requirements contained in R.C. 2943.031(D)[3]), or (2) when a court finds, pursuant to Crim.R. 32.1, that it is necessary to correct manifest injustice." (Footnotes omitted.) *State v. Toyloy*, 10th Dist. Franklin No. 14AP–463, 2015-Ohio-1618, 2015 WL 1913431, ¶ 12.

{¶11} R.C. 2943.031(F) "clarifies that the statute does not prevent a trial court from granting a plea withdrawal under the procedural rule, Crim.R. 32.1." *Toyloy*, ¶ 12. Thus, R.C. 2943.031 provides "an independent means of withdrawing a guilty plea separate and apart from and in addition to the requirements of Crim.R. 32.1." *State v. Weber,* 125 Ohio App.3d 120, 129, 707 N.E.2d 1178 (10th Dist. 1997). Accordingly, when a motion to withdraw plea is premised under R.C. 2943.031(D), the usual "manifest injustice" standard applied to Crim.R. 32.1 motions does not apply; rather, the standards in R.C. 2943.031 apply. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶ 26.

*Appellate Review.*

{¶12} However, regardless of whether the motion to withdraw the guilty plea is based on R.C. 2943.031 or Crim.R. 32.1, an appellate court reviews a trial court's decision on the motion under an abuse of discretion standard. *Francis* at ¶ 32. Generally, "[a] trial

---

consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." R.C. 2943.031(A).

[3] R.C. 2943.031(D) provides: "Upon motion of the defendant, the court shall set aside the judgment and permit the defendant to withdraw a plea of guilty or no contest and enter a plea of not guilty or not guilty by reason of insanity, if * * * the court fails to provide the defendant the advisement described in division (A) of this section, the advisement is required by that division, and the defendant shows that he is not a citizen of the United States and that the conviction of the offense to which he pleaded guilty or no contest may result in his being subject to deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, c*iting State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). *See also, State v. Cardenas,* 2nd Dist. Darke No. 2015-CA-16, 2016-Ohio-5537, 61 N.E.3d 20, ¶ 14-¶16.

*Ineffective Assistance as a Ground for Withdrawing a Guilty Plea.*

**{¶13}** In his motion, Romero alleged ineffective assistance of counsel as a ground for withdrawing his guilty pleas.

**{¶14}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

**{¶15}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley.* *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251(2009); *Accord, Buck v. Davis,* __U.S. ___, 137 S.Ct. 759, 775, ___L.Ed.2d ___ (U.S. Feb. 22, 2017).

*Attorney's duty to a non-citizen client.*

**{¶16}** A defense attorney has a duty to advise a noncitizen client that, "pending criminal charges may carry a risk of adverse immigration consequences," and, if it is "truly

clear" what those consequences are, counsel must correctly advise the defendant of the consequences. *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). A defense attorney's failure to advise his client accordingly satisfies the first prong of *Strickland*, as it constitutes deficient performance. Id. However, because "[i]mmigration law can be complex," when the relevant immigration "law is not succinct and straightforward * * *, a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla,* 559 U.S. 369, 130 S.Ct. 1473. Nevertheless, when the immigration consequences of a guilty plea can be "easily determined from reading the removal statute," and "the deportation consequence is truly clear * * * the duty to give correct advice is equally clear." Id.

{¶17} In *Padilla* the Court explained the importance of a defendant understanding his or her potential for deportation,

> Finally, informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process. By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties. As in this case, a criminal episode may provide the basis for multiple charges, of which only a subset mandate deportation following conviction. Counsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of

deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence. At the same time, the threat of deportation may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty in exchange for a dismissal of a charge that does.

559 U.S. at 373, 130 S.Ct. 1473, 176 L.Ed.2d 284.

{¶18} Further, in *Padilla*, the Supreme Court rejected the government's proposition that *Strickland* should apply only "to the extent that [Padilla] ha[d] alleged affirmative misadvice." Id. at 369, 130 S.Ct. 1473. The court agreed with Padilla that "there is no relevant difference 'between an act of commission and an act of omission' in this context." Id. at 370, 130 S.Ct. 1473, quoting brief of respondent, 30. *See also Strickland* at 690, 104 S.Ct. 2052; *State v. Ayesta*, 8th Dist. No. 101383, 2015-Ohio-1695, 2015 WL 2091679, ¶ 15 (noting that counsel breaches its duty under *Padilla* "by either providing affirmative misadvice about immigration consequences, or by not providing any advice at all when advice is warranted"). The *Padilla* court observed that "[a] holding limited to affirmative misadvice would invite" the following two absurd results: (1) "it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available," and (2) "it would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available." Id. at 370–71, 130 S.Ct. 1473

{¶19} Indeed, "[w]hen attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all." Id. at 370, 130 S.Ct. 1473. The court further noted that "'"[p]reserving the

client's right to remain in the United States may be more important to the client than any potential jail sentence.'"'"  Id. at 368, 130 S.Ct. 1473, *quoting INS v. St. Cyr*, 533 U.S. 289, 322, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), *quoting 3 Bender, Criminal Defense Techniques,* Sections 60A.01–02 (1999).  Thus, the court concluded that the "severity of deportation—'the equivalent of banishment or exile,' * * *—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation."  Id. at 373–74, 130 S.Ct. 1473.

**{¶20}**  *Padilla* concerned a noncitizen defendant who pled guilty to the charge of drug distribution, a deportable offense under 8 U.S.C. 1227(a) (2)(B)(i).  Padilla's attorney did not advise him of the deportation consequences of his plea, and affirmatively misadvised Padilla that he had nothing to worry about with respect to his immigration status.  Padilla asserted, "he would have insisted on going to trial if he had not received incorrect advice from his attorney."  559 U.S. at 359, 130 S.Ct. 1473.  The Supreme Court held that Padilla's trial counsel's failure to inform Padilla "whether his plea carrie[d] a risk of deportation" constituted deficient performance under the first prong of *Strickland*, as the relevant immigration statute was "succinct, clear, and explicit."  559 U.S. at 374, 368, 130 S.Ct. 1473.  The court did not address the issue of prejudice, and remanded the case for the lower court to determine the prejudice issue in the first instance.

**{¶21}**  In *Padilla,* the Court gave a brief history of immigration law.  The Court noted,

> [F]rom 1917 forward, there was no such creature as an automatically deportable offense.  Even as the class of deportable offenses expanded,

judges retained discretion to ameliorate unjust results on case-by-case bases.

559 U.S. at 362, 130 S.Ct. 1473. However, this procedure known as a judicial recommendation against deportation, or JRAD is no longer part of our law. The Court explained,

Congress first circumscribed the JRAD provision in the 1952 Immigration and Nationality Act (INA), and in 1990 Congress entirely eliminated it, 104 Stat. 5050. In 1996, Congress also eliminated the Attorney General's authority to grant discretionary relief from deportation, 110 Stat. 3009–596, an authority that had been exercised to prevent the deportation of over 10,000 noncitizens during the 5-year period prior to 1996, *INS v. St. Cyr*, 533 U.S. 289, 296, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). *Under contemporary law, if a noncitizen has committed a removable offense after the 1996 effective date of these amendments, his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses.* See 8 U.S.C. § 1229b. Subject to limited exceptions, *this discretionary relief is not available for an offense related to trafficking in a controlled substance.* See § 1101(a)(43)(B); § 1228.

559 U.S. at 363-364, 130 S.Ct. 1473 (footnotes omitted)(emphasis added).

{¶22} In the case at bar, the record indicates that the DHS notified Romero that he was subject to deportation under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the

Immigration and Nationality Act ["INA"], which are codified in the United States Code as 8 U.S.C. §1227(a)(2)(A)(iii), and 8 U.S.C. §1227(a)(2)(B)(i). Section 1227(a)(2)(A)(iii) provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." We note that an "aggravated felony" includes "illicit trafficking in a controlled substance * * * including a drug trafficking crime * * *." 8 U.S.C. § 1101(a)(43)(B). A "controlled substance" is defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). *State v. Cardenas,* 2nd Dist. Darke No. 2015-CA-16, 2016-Ohio-5537, 61 N.E.3d 20, ¶45. Marijuana is a Schedule I drug. 21 U.S.C. § 812(c). *Gonzales v. Raich*, 545 U.S. 1, 14, 125 S.Ct. 2195, 162 L.Ed.2d 1(2005). Accordingly, Romero's conviction for trafficking between five thousand and twenty thousand grams of marijuana qualifies as an "aggravated felony."

{¶23} Likewise, Section 1227(a)(2)(B)(i) provides that "[a]ny alien who at any time after admission has been convicted of a violation of * * * any law or regulation of a State, the United States, or a foreign country relating to a controlled substance * * * other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." Accordingly, Romero's convictions are for violating Ohio law relating to control substances.

{¶24} In *State v. Cardenas,* the Second District Court of Appeals observed,

> While the use of the word "deportable" in the aforementioned code provisions indicates that deportation is not a certainty or immediate, in analyzing the same term in a similar provision of the United States Code, the Eighth District Court of Appeals explained that:

While the word "deportable," in its most literal interpretation, means "able to be deported," as the United States Supreme Court has recognized, the practical result of such a conviction is that the alien almost always will be deported. *See Padilla* at 360–364 [130 S.Ct. 1473] (explaining how federal law has changed since the 1990s and stating that "[u]nder contemporary law, if a noncitizen has committed a removable offense * * * his removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses. See 8 U.S.C. 1229b." Courts have been describing the level of certainty of deportation for deportable offenses as "virtually automatic" and "unavoidable," *United States v. Couto*, 311 F.3d 179, 184 (2d Cir. 2002), "certain," *INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347, 325 (2001), and "presumptively mandatory," *Hernandez v. State*, 124 So.3d 757, 763 (Fla.2012).

*Ayesta,* 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, 2015 WL 2091679 at ¶ 7.

2016-Ohio-5537, 61 N.E.3d 20, ¶46.  Indeed, in *Padilla* the United States Supreme Court found,

In the instant case, the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for Padilla's conviction. See 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or

attempt to violate) any law or regulation of a State, the United States or a foreign country relating to a controlled substance ..., other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable"). Padilla's counsel could have easily determined that his plea would make him eligible for deportation simply from reading the text of the statute, which addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses.

559 U.S. at 368-369, 130 S.Ct. 147.

{¶25} In the case at bar, the trial court never made a finding concerning whether Romero's attorney properly advised him, or did not properly advise him, that his guilty pleas would result in Romero's deportation. The trial court instead relied upon the fact that the court had advised Romero in accordance with R.C. 2943.031. In *Padilla,* the trial court did not give the defendant any advisement concerning the deportation consequences of his plea prior to accepting his guilty plea.

*R.C. 2943.031 warning.*

{¶26} In Ohio, R.C. 2943.031 obligates a trial court, prior to accepting a guilty plea from a noncitizen defendant, to provide the following advisement: "you are hereby advised that conviction of the offense to which you are pleading guilty * * * may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." R.C. 2943.031(A).

{¶27} The trial court gave Romero the following admonishment,

THE COURT:          If you are not a citizen of the United States, you are going to be advised and you are hereby advised that a conviction of the offense to which you are pleading guilty *may have* the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

Transcript of Plea & PSI, June 1, 2016 at 5.  (Emphasis added).  Accordingly, the plea hearing transcript reveals the trial court complied with R.C. 2943.031(A).  *See State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, syllabus.

**{¶28}** In his affidavit, Romero does not allege that his attorney gave him inaccurate or incomplete advice concerning the immigration consequences of his pleas,

4. Further, Affiant says that his attorney…never advised him of the immigration consequences of his guilty pleas to drug possession and trafficking, most importantly, that he would be immediately deported.

*Affidavit of Carlos Humberto Romero*, attached as "Exhibit C," Emergency Motion to Withdraw Pleas and Vacate Judgment, filed Oct. 14, 2016.

**{¶29}**  Romero provides no explanation as to his failure to inquire in open court in response to the trial court's warnings under R.C. 2943.031(A).

**{¶30}**  While Ohio courts, including this one, have previously held that a trial court's proper advisement under R.C. 2943.031 cures the prejudice resulting from an attorney's deficient performance, more recently, Ohio courts and federal courts have begun to back away from that principle and are holding that a proper advisement *may* preclude a finding of prejudice.  *State v. Kostyuchenko*, 1st Dist. Hamilton No. C-130257, 2014-Ohio-324, 8 N.E.3d 353, ¶15 ("But the plea form and the R.C. 2943.031 advisement, because they

informed Kostyuchenko only that he "may" be deported, did not provide the degree of "accura[cy]" concerning immigration consequences that *Padilla* demands when, as here, federal immigration law plainly mandates deportation.  *See Padilla*, 559 U.S. at 364, 130 S.Ct. 1473, 176 L.Ed.2d 284.  Therefore, neither counsel's review of the plea form with Kostyuchenko, nor the trial court's compliance with R.C. 2943.031, effectively precluded a finding that Kostyuchenko had been prejudiced by counsel's violation of his duty under *Padilla* to advise him that he would be deported."); *State v. Cardenas,* 2nd Dist. Darke No. 2015-CA-16, 2016-Ohio-5537, 61 N.E.3d 20, ¶49; *State v. Yapp,* 8th Dist. Cuyahoga Nos. 101247, 101248, 2015-Ohio-1654, ¶16 ("Therefore, we clarify that a trial court's R.C. 2943.031(A) advisement does not necessarily foreclose the possibility of finding prejudice under *Padilla* and move away from the progeny of *Bains* [8th Dist. Cuyahoga No. 94330, 2010-Ohio-5143] that seemed to expansively interpret *Bains* as a bright line rule that the advisement cures all prejudice."); *State v. Arrunategui,* 9th Dist. Summit No. 26547, 2013-Ohio-1525, ¶15 ("While the State argues that compliance with Revised Code Section 2943.031(A) in and of itself prevents Arrunategui from successfully proving he was prejudiced by counsel's performance, this Court will not go so far as to hold that compliance with that statute is always determinative of the issue of prejudice when a defendant claims ineffective assistance of counsel."); *State v. Galdamez,* 10th Dist. Franklin No. 14AP-527, 2015-Ohio-3681, ¶25; *State v. Tapia-Cortes,* 12th Dist. Butler No. CA2016-Ohio-02-031, 2016-Ohio-8108, ¶30; *See also*, *United States v. Kayode,* 777 F.3d 719, 728–29 (5th Cir. 2014) (while judicial admonishments [regarding the possible deportation consequences of a plea] are not a substitute for effective assistance of counsel, they are relevant under the second *Strickland* prong in determining whether a

defendant was prejudiced by counsel's error); *United States v. Urias-Marrufo,* 744 F.3d 361, 368-369(5th Cir. 2014) ("It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy. Thus, it is irrelevant that the magistrate judge asked Urias whether she understood that there might be immigration consequences and that she and her attorney had discussed the possible adverse immigration consequences of pleading guilty." (Footnotes omitted)).

{¶31} Thus, under the current view, compliance with R.C. 2943.031(A) is not determinative; it is merely one factor for the trial court to consider.

*Prejudice under Strickland.*

{¶32} Generally under the second prong of *Strickland,* a defendant must show there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 303(1985). In the specific context of a defense counsel's failure to advise a defendant of the immigration consequences of a guilty plea, the United States Supreme Court has held that a defendant demonstrates prejudice by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372, 130 S.Ct. 1473, 176 L.Ed.2d 284; *State v. Galdamez,* 10th Dist. Franklin No. 14AP-527, 2015-Ohio-3681, ¶37.

*Conclusion.*

{¶33} Accordingly, because the trial court denied the motion solely on the basis of the R.C. 2943.031 advisement we find it appropriate to remand the case for the parties to develop a record regarding whether Romero's decision to reject the plea bargain would

have been rational under the circumstances.  In *State v. Francis*, the Ohio Supreme Court

noted,

> There is no specific requirement to hold a hearing in this situation.
> However, it sometimes is difficult for an appellate court to review a trial
> court's ruling on a motion to withdraw a plea to determine whether an abuse
> of discretion occurred when no hearing was held.
>
> In *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715, at paragraph one
> of the syllabus, this court acknowledged the importance of a hearing to aid
> in developing a record that could be examined by a reviewing court to
> determine whether a trial court properly exercised its discretion in ruling on
> a motion to withdraw a plea.  Xie stands for the proposition that, unless it is
> clear that denial of the motion is warranted, a trial court should hold a
> hearing.  *See, also, Garmendia, supra*, Montgomery App. No. 2002-CA-18,
> 2003-Ohio-3769, 2003 WL 21658528, at ¶ 12, which mentions the
> importance of a trial-court hearing on an R.C. 2943.031(D) motion to
> establish whether the defendant has met the statutory factors, including that
> the defendant has shown that he or she is not a citizen of the United States
> and that there may be immigration-related consequences from the
> conviction resulting from the plea.  In some situations when a hearing
> should have been held, a trial court's failure to have held a hearing amounts
> to an abuse of discretion.  We find this case to be one in which a hearing
> should have been held.

104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355, ¶50-¶51; *State v. Galdamez,* 10th Dist. Franklin No. 14AP-527, 2015-Ohio-3681, 41 N.E.3d 467, ¶45; *State v. Arrunategui,* 9th Dist. Summit No. 26547, 2013-Ohio-1525, ¶15.

**{¶34}** Accordingly, we find the trial court abused its discretion in denying Romero's motion without a hearing to determine whether Romero's decision to reject the plea bargain would have been rational under the circumstances.

**{¶35}** We reverse the judgment of the Stark County Court of Common Pleas and remand the case for proceedings consistent with this decision.

By Gwin, P.J.,

Baldwin, J., and

Wise, Earle, J., concur